Filed 7/14/26  Estate of Bagha CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| Estate of VICTOR BAGHA, Deceased. | B332514 (Los Angeles County Super. Ct. No. 17STPB11167) |
| MARILYN HARTON-ROSS, <br><br> Petitioner and Respondent, <br><br> v. <br><br> RAIDA ALIMARDANI, <br><br> Objector and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jessica A. Uzcategui, Judge.  Reversed and remanded.

Zarmi Law and David Zarmi for Objector and Appellant.

RMO and Sean D. Muntz for Petitioner and Respondent.

\* \* \* \* \* \*

Objector and appellant Raida Alimardani (appellant) appeals from the order for punitive damages following a bench trial in favor of petitioner and respondent Marilyn Harton-Ross (respondent). Appellant contends the punitive damages award was improper because there was no evidence regarding her financial condition and ability to pay. We agree and reverse.

## BACKGROUND

**The parties and the disputed property**

Decedent Victor Bagha (decedent) owned property on La Brea Avenue in Los Angeles (La Brea property) when he died on October 11, 2017. The principal dispute in this case involved the ownership of this property.

Decedent had a total of three marriages and four children. His first marriage to respondent, with whom he had two children, lasted nine years until they divorced in 1978. Decedent had two other children in his second marriage to a woman named Susan. Decedent married appellant in October 2006. The couple separated in January 2015. Appellant filed for divorce, which was ongoing at the time of decedent's death.

In March 2017, decedent executed a holographic will (March 2017 will) giving whatever he owned to his four children, each to receive an equal 25 percent share. In the March 2017 will, decedent named respondent as the person responsible for taking care of his belongings.

**The petitions**

In December 2017, respondent filed a petition for probate of will seeking admission of the March 2017 will. In June 2018, appellant filed a will contest and grounds for opposition to probate of purported will. Appellant alleged the March 2017 will was revoked and a product of respondent's undue influence on decedent. In December 2019, respondent filed a petition under Probate Code section 850, which sought to determine title to the La Brea property and asserted a claim for financial elder abuse.

2

Respondent alleged that the grant deed decedent purportedly executed on July 28, 2011 (July 2011 deed) to transfer the La Brea property to appellant is a forgery. Respondent alleged the property should be an asset of decedent's estate since he owned it when he died.

Decedent did not sign the July 2011 deed; it was signed by appellant as his attorney-in-fact. Appellant claimed she had the right as decedent's power of attorney to transfer the La Brea property to herself via the July 2011 deed. Appellant maintained decedent executed the power of attorney on July 13, 2010, while he was in jail. The July 2011 deed was recorded on September 29, 2017.

Moreover, appellant alleged the March 2017 will was revoked by a September 29, 2017 letter (September 2017 letter) confirming decedent's prior September 11, 2011 will, which named appellant as executor and sole beneficiary. Appellant also claimed another grant deed, dated August 15, 2012, transferred the La Brea property from decedent to appellant (August 2012 deed). This grant deed was recorded on May 22, 2019, after the litigation commenced and more than 18 months after decedent's death.

**The trial**

In March 2023, the matters came for trial. The trial court heard testimony from the parties, Joseph Kennedy (a notary) and Michael Wakshull (an expert in forensic document examination).

The court found the March 2017 will valid. Wakshull testified decedent's signature on the September 2017 letter was lifted from another document. The court found Wakshull's testimony persuasive.

Further, the court found appellant could not transfer the La Brea property to herself via the July 2011 deed because the power of attorney did not authorize her to gift the property to herself. The court also questioned the validity of the July 2011 deed due to Kennedy's refusal to acknowledge he notarized the

3

document and that appellant signed it in front of him on July 28, 2011.  The court concluded decedent owned the property when he died as it was never validly transferred to appellant.

As to the financial elder abuse claim, the court found the evidence regarding the July 2011 deed recording showed appellant took an elder adult's real property with an intent to defraud, under Welfare and Institutions Code section 15610.30.

Accordingly, respondent's petition for probate was granted and appellant's will contest was denied.[1]  The court awarded $250,000 in punitive damages pursuant to Civil Code section 3294.  This award was based on the finding there was clear and convincing evidence appellant misrepresented the execution of the July 2011 deed and the August 2012 deed with the intent to deprive decedent of the La Brea property.  The evidence supporting the finding included appellant's testimony regarding the July 2011 deed, Kennedy's refusal to acknowledge the circumstances surrounding the execution thereof, and appellant's inconsistent deposition testimony concerning her contacts with Kennedy.

Appellant timely appealed.

## DISCUSSION

### I.    Standard of review and applicable law

"Generally, punitive damages awards are reviewed under the substantial evidence standard of review 'in which all presumptions favor the trial court's findings and we view the record in the light most favorable to the judgment.'" (*Behr v.*

---

[1]    While not detailed in the trial court's ruling, appellant testified at trial she spent over half a million dollars in repairs and renovations to the La Brea property.  Appellant also attested she paid over $30,000 in delinquent property taxes on the property.  Appellant was later questioned whether she owns a certain house in Woodland Hills addressed to decedent, that she confirmed she owns.

4

*Redmond* (2011) 193 Cal.App.4th 517, 535.) "'An award of punitive damages hinges on three factors: the reprehensibility of the defendant's conduct; the reasonableness of the relationship between the award and the plaintiff's harm; and, in view of the defendant's financial condition, the amount necessary to punish him or her and discourage future wrongful conduct. [Citations.]'" (*Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 679 (*Baxter*).)

## II. Punitive damages could not be awarded because there was no evidence of appellant's financial condition

### A. *Evidence concerning appellant's ability to pay the punitive damages award was never presented at trial*

Appellant contends punitive damages were improperly awarded against her because no evidence of her financial condition and ability to pay was ever presented. We agree.

"A reviewing court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of the defendant's financial condition." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 110 (*Adams*).) "[A] plaintiff who seeks to recover punitive damages must bear the burden of establishing the defendant's financial condition." (*Id*. at p. 123.) "[T]he purpose of punitive damages is not served by financially destroying a defendant. The purpose is to deter, not to destroy." (*Id*. at p. 112.) "Accordingly, 'an award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition.'" (*Baxter, supra,* 150 Cal.App.4th at p. 680.) "'Without such evidence, a reviewing court can only speculate as to whether the award is appropriate or excessive.'" (*Ibid*.)

To establish a defendant's financial condition, "there should be some evidence of the defendant's actual wealth." (*Baxter, supra*, 150 Cal.App.4th at p. 680.) "Net worth is the most

5

common measure, but not the exclusive measure." (*Ibid*.) "In most cases, evidence of earnings or profit alone are not sufficient 'without examining the liabilities side of the balance sheet.'" (*Ibid*.) "Normally, evidence of liabilities should accompany evidence of assets, and evidence of expenses should accompany evidence of income." (*Ibid*.) "What is required is evidence of the defendant's ability to pay the damage award." (*Robert L. Cloud & Associates, Inc. v. Mikesell* (1999) 69 Cal.App.4th 1141, 1152.)

We conclude punitive damages cannot be awarded against appellant because the trial record has no evidence demonstrating her financial condition and ability to pay the damage award. Appellant was never questioned as to her income, assets, or liabilities. Appellant's finances or ability to pay punitive damages were not issues raised in the trial briefs. Without meaningful evidence on such matters, it cannot be determined if imposing punitive damages against appellant is appropriate or excessive. As discussed above, punitive damages can only deter, not financially destroy, a defendant. (See *Adams*, *supra*, 54 Cal.3d at p. 112.) No evidence was presented showing appellant has the financial ability to pay $250,000 in punitive damages. Thus, the punitive damages award against appellant cannot be sustained.

The only trial testimony involving appellant's assets was a brief statement appellant gave indicating she owns a house in Woodland Hills. But this statement alone cannot establish appellant's financial condition for the purpose of deciding punitive damages. Appellant was not questioned as to whether any encumbrances are attached to the Woodland Hills house. There is no evidence that the mere fact appellant owns this house somehow demonstrates her overall financial state or ability to pay punitive damages. Without further evidence as to appellant's other assets and liabilities, her financial ability to pay the punitive damages award cannot be determined.

Finally, appellant indicates she testified to spending a substantial amount in renovations, delinquent property taxes, and repairs for the La Brea property. Appellant maintains this evidence tends to show her financial inability to pay the punitive damages award. Indeed, the testimony may show appellant's inability to pay the damage award if she spent most of her resources on the property. But more significantly, this evidence shows we can only speculate as to appellant's ability to pay given a lack of evidence of her overall finances. We note respondent indicates she has reviewed the evidence and does not oppose striking the order for punitive damages. Accordingly, this matter should be remanded to vacate the punitive damages award against appellant.

## DISPOSITION

The August 7, 2023 order for punitive damages is reversed. On remand, the trial court shall vacate the order for punitive damages and enter a new order denying respondent's request for punitive damages. Appellant is awarded her costs on appeal.

CHAVEZ, J.

We concur:

LUI, P. J.

RICHARDSON, J.

7